UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIZ M. NELSON, | ) |
|         Plaintiff, | ) |
|         v. | )  Case No. 12 CV 6887 |
| LAKE COUNTY; DEMAR A. HARRIS, in his individual and official capacity; and TERESA BERRYMAN aka TERRI BERRYMAN, in her individual and official capacity, | )  Judge Joan B. Gottschall |
|         Defendants. | ) |

## MEMORANDUM OPINION & ORDER

Plaintiff Liz M. Nelson, proceeding pro se, sued defendants Lake County, Demar A. Harris, and Teresa Berryman. Her amended complaint alleges that the defendants discriminated against her based on her Hispanic race and Panamanian nationality in violation of Title VII and that the defendants violated her procedural due-process rights under 42 U.S.C. §§ 1981 and 1983. Now before the court is the defendants' motion for summary judgment. For the reasons stated below, the motion is granted.

### I. BACKGROUND FACTS

The following facts are not disputed unless otherwise stated. Plaintiff Liz Nelson worked for Lake County in the Workforce Development Department as a case manager and as a career specialist. Lake County's Workforce Development Department distributes state and federal money to Lake County residents to attend short-term training to enhance their wage and career possibilities. The Illinois Department of Commerce monitors the department to ensure proper usage of funds.

As a career specialist, Nelson's job was to determine if individuals were eligible for the training program, collect documents which establish eligibility, and input this information into the Illinois Workforce Development System (IWDS). Career specialists document the individual's enrollment in IWDS and monitor the individuals at 30- and 90-day intervals as mandated by the state. State and department policy required case notes at 30 and 90 days, and Nelson was aware of this policy. Nelson knew that violations of this policy could lead to loss of funding and that the state was monitoring the case notes closely.

Until 2009, Nelson's supervisor was Al Evans. In 2009 or 2010, defendant Demar Harris became Nelson's supervisor. At all relevant periods, defendant Theresa Berryman was the director of the Workforce Development Department. The parties disagree about the extent to which Nelson received warnings about her performance; defendants say that Nelson received her first warning on November 17, 2010. Regardless, the parties agree that on July 7, 2011, Harris e-mailed Nelson and told her that her 30-day case notes were two months late and directed her to update them. On August 19, 2011, Harris e-mailed Nelson again and warned her that her 90-day case notes were late and directed her to update them. By August 30, 2011, Nelson had not updated the case notes and received a written warning due to her failure.

Several of the customers with whom Nelson dealt in her capacity as a career specialist filed complaints against Nelson. On November 16, 2010, Berryman received a complaint from one such individual who said that he had tried to contact Nelson on numerous occasions beginning in March 2010, but that he never heard back from her. On August 31, 2011, Harris received an e-mail from another such individual who said that "Nelson made the experience very difficult" and that "in any case her customer skills are severley [sic] lacking[,] not sure if it's due to her having [E]nglish as a second language, or she enjoys the fact she has the power to veto. I

2

will do anything in my power to avoid any kind of contact with her." (Ludlow E-mail, Aug. 31, 2011, ECF No. 42-1.) On November 5, 2001, Harris received an e-mail from another such individual stating: "Liz Nelson called me at 7:30pm last night to discuss my case. I was surprised by the tone of the discussion . . . . My concern[] at this moment is will I get a fair and unbiased hearing by Liz Nelson. Or will I be bullied by a disgruntled worker?" (Bryan E-mail, Nov. 5, 2011, ECF No. 42-1.) That individual also referred to Nelson as "unethical." (Harris Affidavit ¶ 13; Bryan E-Mail, Oct. 29, 2011, ECF No. 42-1.)

On November 17, 2011, Nelson received notice for a pre-disciplinary meeting to be held the next day. The notice included the time and date of the hearing and the reasons for discipline. Nelson attended the November 18 meeting and offered to answer any questions, but no questions were asked. Nelson was terminated following the hearing. Nelson did not grieve the termination under Lake County's grievance procedure. Nelson states that although she knew the process existed, she was confused about it and did not know her rights.

## II. LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). "[A] factual dispute is 'genuine' only if a reasonable jury could find for either party." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). The court ruling on the motion construes all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

3

Because Nelson proceeds pro se, the court construes her filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

### III. ANALYSIS

Nelson alleges that the defendants discriminated against her on the basis of her race and national origin in violation of Title VII and 42 U.S.C. § 1983. She also alleges that the defendants violated her due-process rights in the circumstances surrounding her termination. The defendants believe they are entitled to summary judgment on Nelson's claims. The court agrees and grants defendants' motion for summary judgment.

**A.     Discrimination**

To withstand a motion for summary judgment on her discrimination claim, Nelson must put forth evidence that she suffered an adverse employment action and that the action was the product of discrimination based on her race or national origin. Here, it is undisputed that Nelson was terminated on November 22, 2011, which constitutes an adverse employment action.

There are two ways for a plaintiff to establish that an adverse employment action was the product of discrimination. Under the "direct method," a plaintiff must "point to enough evidence, whether direct or circumstantial, of discriminatory motivation to create a triable issue." *Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, 749 (7th Cir. 2010). The focus of the direct method of proof is whether the evidence offered "points directly" to a discriminatory reason for the employer's action. *Darchak v. City of Chi. Bd. Of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009).

Alternatively, under the "indirect method," the plaintiff must establish a prima facie case of discrimination. Only after a plaintiff establishes this prima facie case does the burden shift back to the defendants to "articulate a legitimate, non-discriminatory reason for the adverse

4

employment action." *See South v. Ill. Envtl. Prot. Agency*, 495 F.3d 747, 751 (7th Cir. 2007). If the defendants can do so, the ultimate burden shifts back to the plaintiff to present evidence showing that the defendants' purported reason for the adverse action was pretextual. *Id.* Nelson's claim fails under both the direct and indirect methods.

    1.    <u>Direct Method</u>

Although Nelson's response brief indicates that she proceeds under the indirect method, she also states that she has some direct evidence about derogatory remarks made against Hispanics. Nelson argues that Harris made derogatory comments in her presence about his Honduran mother-in-law and Hondurans in general. She also notes that one of defendants' witnesses, Daniel Ludlow, wrote a document stating: "her customer skills are severley [sic] lacking[,] not sure if it's due to her having English as a second language." (Pl.'s Resp. to Defs.' Mem. 3, ECF No. 49.)

The Seventh Circuit has stated that proving discrimination via direct evidence "essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). Nelson points to no facts showing that any of the defendants admitted that Nelson's termination was based on her race or national origin.

The Seventh Circuit has also stated that a plaintiff may proceed under the direct method using "a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker.'" *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994)). In this circuit, courts typically identify three non-exclusive categories of circumstantial evidence on which a plaintiff may rely to make such a showing:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.

*Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 812 (7th Cir. 2007) (citation omitted).

The evidence Nelson cites is insufficient to create a material issue of fact under the direct method. Harris's comments were directed at his mother-in-law and Hondurans, not about Hispanics in general or Panamanians. Ludlow filed a complaint against Nelson; he is not an employee of Lake County. Nelson puts forward no evidence suggesting that Ludlow is a decision-maker who had the power to take adverse employment action against her. Nelson does not indicate that Harris or Ludlow's comments were made contemporaneously with her termination. "To rise to the level of direct evidence of discrimination, [the Seventh Circuit] has stated that 'isolated comments must be contemporaneous with the discharge or casually related to the discharge decision making process.'" *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 723 (7th Cir. 1998) (quoting *Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir. 1996)). Lacking any such evidence, Nelson's claim fails under the direct method.

2. <u>Indirect Method</u>

Under the indirect method, Nelson must prove four elements to establish a prima facie case of discrimination: (1) she is a member of a protected class; (2) her performance met the employer's legitimate expectations; (3) despite this performance, she was subjected to an adverse employment action; and (4) her employer treated similarly situated employees outside of the protected class more favorably. *See Eaton v. Ind. Dep't of Corr.*, 657 F.3d 551, 554 (7th Cir.

2001); *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 728 (7th Cir. 2004) (noting that the second and fourth prongs of this test "merge" when the allegations relates to a disparate punishment).

The defendants do not dispute that Nelson fulfills the first and third elements of the test: Nelson is a member of a protected class based on her Hispanic race and Panamanian national origin, and her termination constituted an adverse employment action. *See Vega v. Chi. Park Dist.*, 958 F. Supp. 2d 943, 951 (N.D. Ill. 2013) ("Here, [Plaintiff] has satisfied the first and third elements of the test by pleading that she is a member of a protected class (Hispanic) and that her employment termination constitutes the termination . . . of the contractual relationship." (internal quotation marks omitted)).

But Nelson cannot establish that similarly situated employees outside of the protected class (i.e. non-Hispanics or non-Panamanians) were treated more favorably. To establish her prima facie case of discrimination, Nelson bears the burden of showing that she is "similarly situated with respect to performance, qualifications, and conduct [with another employee]. This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue*, 219 F.3d at 617-18 (internal citations omitted).

Nelson purports to have identified six other career specialists who were similarly situated and not subject to adverse employment action. But defendants have demonstrated that Harris and Berryman received multiple complaints about Nelson. Nelson agrees that Harris and Berryman did not receive complaints about the other six career specialists. The court concludes that Nelson fails to establish that the defendants treated Nelson differently from similarly

situated employees who were not Hispanic or Panamanian. Accordingly, Nelson fails to make a prima facie case for discrimination under the indirect method and cannot prevail on her claim.

Even if Nelson could make a prima facie case for discrimination, the defendants would be entitled to summary judgment. Once a plaintiff makes a prima facie showing, the burden then shifts to the defendants to provide a legitimate, non-discriminatory reason for her termination. They do so; defendants argue that Nelson was terminated "because her performance was decidedly deficient and she engaged in conduct that was unprofessional and possibly unethical . . . ." (Defs.' Reply Br. 1, ECF No. 59.) The burden then shifts back to Nelson to show that these reasons were pretextual. Nelson fails to carry this burden.

"The focus of the pretext inquiry is whether the proffered reason is a lie." *Smiley v. Columbia Coll. Chi.*, 714 F.3d 998, 1002-03 (7th Cir. 2013). "An inquiry into pretext requires that we evaluate the honesty of the employer's explanation, rather than its validity or reasonableness." *Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013). For a plaintiff to establish pretext, she "must identify such weaknesses, implausibilities, inconsistencies, or contradictions in [the defendants'] proffered reasons that a reasonable person could find them unworthy of credence and hence infer that [the defendants] did not act for the asserted non-discriminatory reasons." *Bouhmedi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007). Nelson has identified no such weakness, implausibilities, inconsistencies, or contradictions.

The court concludes that Nelson cannot establish a prima facie case of discrimination under the indirect method, as she fails to demonstrate that similarly situated employees outside the protected class were treated differently from her. Even if Nelson could successfully establish her prima facie case, the defendants offer legitimate, non-discriminatory reasons for her

discharge. Nelson fails to carry her burden of showing that the proffered reasons are pretextual, which she must do to overcome summary judgment. Accordingly, the court concludes that the defendants are entitled to summary judgment on Nelson's discrimination claim.

**B.      Procedural Due Process**

Nelson's amended complaint alleges that the defendants violated her procedural due-process rights "by not providing Plaintiff the opportunity of having a fair pre-disciplinary hearing, by not giving her sufficient time to prepare for the hearing and by denying Plaintiff any opportunity to correct alleged misconducts, and by Defendants Harris and Berryman not informing or advising Plaintiff of her grievance rights." (Am. Compl. 8, ECF No. 22.) Nelson further alleges that the defendants violated her due-process rights "by not giving Plaintiff the opportunity to be heard concerning the unfairness of her termination after the County Administrator was informed of the circumstances of Plaintiff's termination by Plaintiff's counselor in letter, dated January 5, 2012." (*Id.*) The defendants argue that Plaintiff has failed to establish a violation of her procedural due-process rights and ask the court to grant summary judgment in their favor.

"For a pre-termination hearing to comply with due process requirements the employee must receive: (1) oral or written notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity to tell [her] side of the story." *Bodenstab v. Cnty. of Cook*, 569 F.3d 651, 664 (7th Cir. 2009). There is no dispute that the defendants fulfilled the first two elements. As for the third element, Nelson admits in her complaint that at the hearing, "No questions were asked, even though Plaintiff stated to be open to answer any questions." (Am. Compl. ¶ 39, ECF No. 22.) She also admits that before the hearing, she responded to Harris and Berryman's allegations against her in an e-mail. (*Id.*) Her response brief does not attempt to

rebut the defendants' assertion that "Plaintiff appeared at the hearing and was again given an opportunity to respond to the charges at the hearing." Nelson has failed to show that there is a question of material fact on whether her pre-termination hearing complied with procedural due-process requirements.

To the extent Nelson argues that she was confused about the post-termination grievance procedure, such an argument does not go to whether the *hearing* comported with procedural due process, and the court is unaware of any authority requiring an employer to notify an employee of a post-termination grievance process. The court concludes that the defendants are entitled to summary judgment on Nelson's claim for violation of procedural due process.

### IV. CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment is granted. The clerk is directed to enter judgment in favor of the defendants against Liz Nelson, and the case is terminated.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 18, 2014